UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


DWAYNE E. SHEPPARD,

     Applicant,

v.                                 CASE NO. 8:12-cv-1127-SDM-AEP

SECRETARY, Department of Corrections,

     Respondent.

_____/

## **ORDER**

Sheppard applies under 28 U.S.C. § 2254 for a writ of habeas corpus (Doc. 18) and challenges his conviction for sexual battery with a deadly weapon, for which Sheppard is imprisoned for life. Numerous exhibits (Doc. 25) support the response. (Doc. 24) The respondent concedes that the amended application is timely (Doc. 24 at 11) but argues that the grounds in the amended application are procedurally barred. (Doc. 24 at 17–21, 29–35, 43, 52–53, 60–62)

## I. **BACKGROUND**[1]

In 1985, J.J.F. lived with her daughter, who was five, in a house in Oldsmar, Florida. (Doc. 25-3 at 254–56, 262) On June 22, 1985, a male shook J.J.F.'s arm while J.J.F. slept with her daughter in her daughter's bed. (Doc. 25-3 at 262–63) The male, who was naked, brandished a sharp object and demanded that J.J.F. move

---

[1] This summary of the facts derives from the briefs on direct appeal (Doc. 12-2 at 828–32) and the trial transcripts.

to the living room.  (Doc. 25-3 at 264–65)  In the living room, the male told J.J.F. about his recent release from jail and stated that "they would know" if he left J.J.F.'s house, that "they were willing to pay him five-hundred dollars to do this," and that "they were waiting for him."  (Doc. 25-3 at 267–68, 270, 283)  The male, who wore strong-smelling cologne, repeatedly sniffed from a canister.  (Doc. 25-3 at 268–69)  The male touched J.J.F.'s breasts and vagina, placed his mouth on J.J.F.'s vagina, engaged in vaginal sex with J.J.F., and ejaculated on her stomach.  (Doc. 25-3 at 270–74)  After the sexual battery, the male directed J.J.F. to clean herself in the shower.  (Doc. 25-3 at 275–77)

During a physical examination, a doctor observed redness and mild inflammation on J.J.F.'s vagina consistent with sexual intercourse without consent. (Doc. 25-3 at 468–69)  The doctor recovered no semen or other bodily fluid during the examination.  (Doc. 26-3 at 469–70)

A detective recovered two fingerprints from a screen removed from a window that opened to the bedroom where J.J.F. and her daughter slept.  (Doc. 25-3 at 233–34, 279, 395–400)  The two fingerprints from the window screen matched Sheppard's fingerprints.  (Doc. 25-3 at 420–28)  The evening of the crime, J.J.F's neighbor heard a car door close and observed a male exit a blue "muscle car" with a white vinyl top that looked like a car driven by Sheppard.  (Doc. 25-3 at 355–61)  That evening, a police officer cited Sheppard for recklessly driving a 1973 Mercury Cougar.  (Doc. 25-3 at 368–69)  Two weeks later, Sheppard reported to police that a male and female stole his blue Mercury Cougar with a white vinyl top.  (Doc. 25-3

at 381–85)  The following year, a police officer detained Sheppard, who was walking down a residential street about a mile from J.J.F.'s house.  (Doc. 25-3 at 441–42, 511)  During a pat-down, the police officer found in Sheppard's pockets a woman's stockings, a knife, and a container for inhalants.  (Doc. 25-3 at 443)  Sheppard told the police officer that he intended to use the items to play a trick on some women at a party.  (Doc. 25-3 at 444)

Twenty years later, in 2005, a detective showed J.J.F. a photographic lineup containing Sheppard's photograph, and J.J.F. identified Sheppard and another person as possible suspects.  (Doc. 25-3 at 281, 486–89)  Sheppard, who voluntarily came to the police station, told the detective that in 1985 he lived in Clearwater and worked as a painter.  (Doc. 25-3 at 496–97)  Sheppard was close friends with Tommy Peterson, who lived across the street from J.J.F.  (Doc. 25-3 at 281, 490, 500–01)  Sheppard denied recognizing J.J.F.'s house but could not explain why his fingerprints appeared at the crime scene.  (Doc. 25-3 at 498–99)

During the defense's case-in-chief, a records custodian from the City of Oldsmar testified that in June of 1985, Sheppard worked for the water department.  (Doc. 25-3 at 550–51)  Dwayne Milligan testified that on June 21, 1985, Sheppard slept at his home.  (Doc. 25-3 at 561)  That evening, Milligan, Sheppard, and other friends celebrated the birth of Milligan's daughter by going to several bars.  (Doc. 25-3 at 556–59)  The men returned to Milligan's home at 2:30 A.M. or 3:00 A.M. on June 22, 1985, and slept until 10:00 A.M. or 11:00 A.M. (Doc. 25-3 at 559–61)

Sheppard testified in his own defense. In 1985 Sheppard worked for the water department at the City of Oldsmar. (Doc. 25-3 at 571) Sheppard spent the evening of June 21, 1985, with Milligan and slept at Milligan's home. (Doc. 25-3 at 573, 583) Sheppard believed that he might have touched the window screen in J.J.F.'s backyard because he often picked up items in a resident's yard when he checked the resident's water meter for the water department. (Doc. 25-3 at 572, 575, 582) During the prosecutor's rebuttal, J.J.F. testified that a person accessed the water meter in the front yard of her house. (Doc. 25-3 at 591)

## II. <u>EXHAUSTION AND PROCEDURAL DEFAULT</u>

The respondent argues that the grounds in the petition are procedurally barred from federal review because Sheppard failed to exhaust the claims. (Doc. 24 at 17–21, 29–35, 43, 52–53, 60–62) "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (citing *Henry*, 513 U.S. at 365–66).

**Ground One:**

Sheppard asserts that the trial court erroneously denied his motion for judgment of acquittal because the prosecutor failed to rebut his reasonable hypothesis of innocence. (Doc. 18 at 4–6) Generously construed, Sheppard's *pro se* federal petition asserts that the state court violated his federal right to due process because the prosecutor failed to prove the crime at trial. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Sheppard presented a similar claim as his first issue on direct appeal but presented that issue under state law and not as the violation of a federally protected right. On direct appeal, Sheppard argued that the prosecutor failed to rebut his reasonable hypothesis of innocence but cited no federal authority. (Doc. 25-1 at 91–98) "Under federal law, the prosecution does not have 'an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt.'" *Preston v. Sec'y, Fla. Dep't Corrs.*, 785 F.3d 449, 461 (11th Cir. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). The failure to alert the state appellate court to the claim that the trial court violated a federally protected right fails to meet the exhaustion requirement. *Preston*, 785 F.3d at 461. Ground one is unexhausted.

**Ground Two:**

Sheppard asserts that in imposing an upward departure the trial court violated his federal right to a jury trial under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by relying on facts not proven to a jury beyond a reasonable doubt. (Doc. 18 at 7–11) Sheppard raised this claim in his motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, and the post-conviction court denied the claim

as both procedurally defaulted and meritless.  (Doc. 25-1 at 192–93)  In a motion to correct his sentence under Rule 3.800(a), Florida Rules of Criminal Procedure, Sheppard raised a similar claim based on state sentencing law, and the post-conviction court denied the claim as meritless.  (Doc. 25-2 at 97–98)  Also, he raised the claim in a second Rule 3.800(a) motion, and the post-conviction court denied the claim as both successive and meritless.  (Doc. 25-2 at 185–89)

The respondent argues that Sheppard waived this claim by voluntarily dismissing his appeal from the denial of his first Rule 3.800(a) motion and by conceding that the trial court did not erroneously impose the upward departure. (Doc. 24 at 31–35)  However, in his first Rule 3.800(a) motion, Sheppard asserted a claim based on state sentencing law.  (Doc. 25-2 at 15–35)  Consequently, Sheppard did not concede that the trial court complied with federal law.

The respondent further argues that the claim is procedurally barred because the post-conviction court dismissed the claim in his Rule 3.850 motion as procedurally defaulted.  (Doc. 24 at 30)  *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").  However, *Plott v. State*, 148 So. 3d 90, 95 (Fla. 2014), held that a defendant may raise a post-conviction *Apprendi* claim.  Consequently, the procedural default rule under Rule 3.850(c) is not "regularly followed" for an *Apprendi* claim.  *Cochran v. Herring*, 43 F.3d 1404, 1408 (11th Cir. 1995) ("When a state's 'procedural default rule has been only sporadically invoked, the procedural

default no longer bars consideration of the issue in federal court.'") (citation omitted).

Lastly, the respondent argues that the claim is procedurally barred because the post-conviction court dismissed the claim in his second Rule 3.800(a) motion as successive. (Doc. 25-2 at 186–87) The post-conviction court cited *State v. McBride*, 848 So. 2d 287, 291 (Fla. 2003) (italics in original) (Doc. 25-2 at 187), which bars "the filing of successive *repetitive* 3.800 motions." Because Sheppard raised the claim for the first time in a Rule 3.850 motion and a second time in a Rule 3.800(a) motion, the post-conviction court incorrectly applied the state procedural bar in *McBride*, and the ruling does not preclude federal review. *Brown v. Sec'y, Dep't Corrs.*, 200 F. App'x 885, 887 (11th Cir. 2006) (holding that a state procedural rule is inadequate if "based on an incorrect application of state procedural default law").

Also, the post-conviction court dismissed the *Apprendi* claim in the Rule 3.850 motion as procedurally defaulted (Doc. 25-1 at 192–93), *Plott*, 148 So. 3d at 95, issued after the denial of the Rule 3.850 motion and established the right to raise a post-conviction *Apprendi* claim, and Sheppard raised the *Apprendi* claim, for the first time after *Plott*, in the second Rule 3.800(a) motion. Consequently, ground two is not procedurally defaulted.

**Ground Three:**

Sheppard asserts that trial counsel deficiently performed by failing to call witnesses to testify at trial. (Doc. 18 at 12–13) The respondent argues that Sheppard failed to cite federal authority. (Doc. 24 at 44) Sheppard raised this claim in

a post-conviction motion (Doc. 25-1 at 158–62) and an appellate brief (Doc. 25-1 at 306–10) and cited the Sixth Amendment and other federal authority.  Ground three is exhausted.

**Ground Four:**

Sheppard asserts that trial counsel deficiently performed by failing to object based on the Confrontation Clause to the admission of out-of-court statements by Officer Bernard McKenna.  (Doc. 18 at 14–15)  The respondent argues that the claim is procedurally defaulted because Sheppard could have raised the claim based on the Confrontation Clause on direct appeal.  (Doc. 25 at 52)  However, Sheppard asserts an ineffective assistance of counsel claim, a defendant cannot raise an ineffective assistance of counsel claim on direct appeal, and the post-conviction court reviewed the merits of the claim.  (Doc. 25-1 at 195–97)  Fla. R. Crim. P. 3.850(c).
*Steiger v. State*, 328 So. 3d 926, 929 (Fla. 2021) ("[B]ased on the plain language of section 924.051(3), unpreserved claims of ineffective assistance of counsel cannot be raised or result in reversal on direct appeal because the statute requires the more demanding showing of fundamental error.").  *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available.").  Ground four is exhausted.

**Ground Five:**

Sheppard asserts that the prosecutor violated his federal right to due process by introducing into evidence a fraudulent copy of a traffic citation and violated

*Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose to the defense an original copy of the traffic citation.  (Doc. 18 at 16–18)  Sheppard contends that "someone falsified the citation by deleting the time, type of infraction, and location of the infraction."  (Doc. 18 at 17)  He did not support his post-conviction motion with an original copy of the traffic citation and instead speculated that the police department's file contained an original copy with the deleted information. (Doc. 25-1 at 172–79)  The post-conviction court denied both claims after determining that "claims of prosecutorial misconduct are foreclosed from collateral review because they should be raised on direct appeal."  (Doc. 25-1 at 194–95) *See* Fla. R. Crim. P. 3.850(c).

Because Sheppard learned before trial that the citation and other records from the police department "[were] destroyed and are unavailable due to the passage of time" (Doc. 25-1 at 284) and learned during trial that the prosecutor introduced into evidence a copy of the citation that did not contain the time, location, and nature of the infraction, he could have raised the claims on direct appeal.  Because Sheppard did not support his claims with new evidence discovered after trial, ground five is procedurally defaulted.  *See State v. Riechmann*, 777 So. 2d 342, 363 (Fla. 2000) ("Riechmann claims that the State suppressed statements from witnesses establishing that Riechmann and Kischnick had a loving relationship. . . . Riechmann's claim on this issue, as it relates to the guilt phase, is procedurally barred because he could and should have raised it on direct appeal, since by trial's end he was aware of the statements.").  *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1258 (11th Cir. 2013)

("'Federal courts may not review a claim procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief.'") (citation omitted).

Ground one and ground five are barred from federal review absent a showing of either "actual cause and prejudice" or a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Sheppard proffers no specific facts to establish either.  (Doc. 29)  Consequently, ground one and ground five are procedurally barred from federal review.

### III.  **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 governs this proceeding.  *Wilcox v. Fla. Dep't Corrs.*, 158 F.3d 1209, 1210 (11th Cir. 1998).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. . . . Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. "AEDPA prevents defendants — and federal courts — from using federal habeas

corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]'") (citations omitted).

When the last state court to decide a federal claim issues an explanatory and reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. A respondent may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson*, 138 S. Ct. at 1192.

In *per curiam* decisions without a written opinion the state appellate court affirmed the denial of Sheppard's Rule 3.850 motion and Rule 3.800(a) motion. (Doc. 25-2 at 11, 262) A state appellate court's *per curiam* decision without a written opinion warrants deference under Section 2254(d)(1). *Wright v. Sec'y, Dep't Corrs.*, 278 F.3d 1245, 1254 (11th Cir. 2002). *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be

presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the state court record:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Sheppard bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001). Sheppard's federal application presents the same grounds that he presented to the state court. The state court's rejection of Sheppard's claims warrants deference in this federal action. (Docs. 25-1 at 192–97 and 25-2 at 185–89)

## IV. ISSUES ON POST-CONVICTION

**Ground Two:**

Sheppard asserts that the trial court violated his federal right to a jury trial under *Apprendi* by relying on facts not proven to a jury beyond a reasonable doubt to

impose an upward departure.  (Doc. 18 at 7–11)  The post-conviction court denied

the claim as follows (Doc. 25-2 at 185–89) (state court record citations omitted):

> In his motion, the Defendant alleges that his sentence is illegal because he was entitled to a jury determination of the grounds used for departing from the guidelines under *Apprendi* and *Blakely*.[1] Under *Apprendi*, any fact, other than a prior conviction, that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. In *Blakely*, the Supreme Court clarified *Apprendi* by ruling that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, that a defendant can waive his *Apprendi* rights, and that when a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial fact finding. Pursuant to the recent holding in *Plott*, the Court directed the State to respond. *See Plott v. State*, 148 So. 3d 90 (Fla. 2014) (holding that a claim of error under *Apprendi* and *Blakely* is cognizable in a rule 3.800(a) motion).
>
> [1] *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004).
>
> In its response, . . . the State argues that even if the Court finds that the Defendant is not barred from bringing this claim, the Defendant's motion should still be denied because any *Apprendi* or *Blakely* error in this case is harmless. The State cites to *Galindez v. State*, 955 So. 2d 517 (Fla. 2007), which held that the standard for determining harmless error is whether the record demonstrates beyond a reasonable doubt that a rational jury would have found the fact that was omitted. The State notes that upon sentencing the Defendant to life imprisonment in this case, the Court found three reasons to depart from the guidelines sentence: psychological trauma to the victim, heightened premeditation, and a particularly vulnerable victim. The State indicates that the record demonstrates beyond a reasonable doubt that a rational jury would have found at least one of the aforementioned reasons to depart from the guidelines sentence. Specifically, the State points to the sentencing hearing transcript to identify the victim's psychological trauma. The State also maintains that the victim's testimony at trial reflects that the victim was particularly vulnerable and demonstrates the Defendant's

heightened premeditation. Therefore, the State argues that any error under *Apprendi* or *Blakely* is harmless because the record establishes beyond a reasonable doubt that a rational jury would have found at least one of the same reasons as the Court to depart from the guidelines sentence.

. . .

[A]n *Apprendi* or *Blakely* claim is cognizable under rule 3.800(a). *See Plott v. State*, 148 So. 3d 90 (Fla. 2014) (*Plott I*). In *Plott I*, the defendant claimed that his sentence was illegal under *Apprendi* and *Blakely* because the court departed from the guidelines by finding that the crime was one of violence and that this was in error because the jury did not make these findings. On remand, the Second District Court of Appeal was directed to conduct a harmless error analysis to determine whether the record reflects beyond a reasonable doubt that a rational jury would have found the offense was one of violence. The Second District Court of Appeal found that after reviewing the jury trial transcripts, the record demonstrates beyond a reasonable doubt that a rational jury would have found that the crime was violent and, therefore, any *Apprendi* and *Blakely* error was harmless. *See Plott v. State*, 165 So. 3d 33, 34 (Fla. 2d DCA 2015) (*Plott II*).

Using the same analysis in *Plott II*, the Court finds that any *Apprendi* or *Blakely* error in this case was harmless error. The Defendant was convicted of a sexual battery with a deadly weapon under Florida Statute [Section] 794.011(3), a life felony punishable "for life or by a term of imprisonment not exceeding forty years." Fla. Stat. §§ 794.011(3), 775.082(3)(a) (l985). However, under the 1983 sentencing guidelines, the Defendant's recommended sentence was seven to nine years' imprisonment and the permitted sentence was five-and-a-half to twelve years' imprisonment. As noted above, the Court departed from the guidelines and imposed a life sentence. Section 921.001(6), Florida Statutes (1985), provides that a departure sentence is permissible if explained in writing by the court. The Court identified three reasons for departing from the guidelines sentence: heightened premeditation, a particularly vulnerable victim, and the victim's psychological trauma.

The record demonstrates beyond a reasonable doubt that a rational jury would have found two reasons used by the Court to justify a departure from the guidelines: heightened premeditation and a particularly vulnerable victim.[2] As to the heightened premeditation, the record reflects that the Defendant told the victim that he made a bet for five-hundred

dollars that he would commit the offense and that "they would know" if he didn't do it. Also, the record reflects that the Defendant knew the neighborhood since he was lifelong friends with Tommy Peterson who lived across the street from the victim. The Defendant parked his car down the street from the victim's house and walked over in the middle of the night. In addition, the Defendant walked around naked in the victim's home and awakened the victim with a sharp object that he placed against her. Further, the Defendant made the victim shower off any evidence after the offense was committed. Therefore, the Court finds that the record reflects beyond a reasonable doubt that a rational jury would have found that there was heightened premeditation.

> [2] The Court notes that the transcript of the sentencing hearing demonstrates strong evidence of the victim's psychological trauma, which was the Court's third reason for departure. The trial transcript, however, does not support this finding. Because a jury was not present for the sentencing hearing in this case and the Second District Court of Appeal in *Plott II* cited specifically to the jury trial transcript to support its findings, the Court does not find that a jury would have found this reason as a basis for departure.

In addition, the Court finds that the record demonstrates beyond a reasonable doubt that a rational jury would have found that the victim was particularly vulnerable. The record reflects that the victim lived alone with her daughter and that she was awakened by the Defendant in the middle of the night while she was sleeping next to her daughter. The victim expressed great worry and concern that she did not want the Defendant to harm her daughter or for her daughter to wake up. The Defendant also told the victim to get up and move to the other room so that her daughter would not wake up. Based on this evidence, the Court finds that the record demonstrates beyond a reasonable doubt that a rational jury would have found that the victim was particularly vulnerable. Therefore, because the record establishes beyond a reasonable doubt that a rational jury would have found two of the reasons the Court used to depart from the guidelines sentence, any *Apprendi* or *Blakely* error is harmless. Thus, even if the Defendant's claim was cognizable and was not dismissed, in the alternative, it would be denied.

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (italics in original).

The jury found Sheppard guilty of sexual battery with a deadly weapon (Doc. 25-3 at 691), a felony punishable by life in prison or a sentence not exceeding forty years. § 794.011(3), Fla. Stat. (1984); § 775.082(3)(a), Fla. Stat. (1985). Sheppard committed the crime on June 22, 1985. (Doc. 25-1 at 2)  The scoresheet calculated 262 points for the offense and forty points for injury suffered by the victim for a total of 302 points (Doc. 25-2 at 200), resulting in a recommended sentence of seven to nine years and a permitted sentence of five-and-a-half to twelve years. (Doc. 25-2 at 200)  Fla. R. Crim. P. 3.988.

The sentencing guidelines require a judge to justify a sentence imposed outside the recommended range with written reasons. § 921.001(6), Fla. Stat. (1985) ("The sentencing guidelines shall provide that any sentences imposed outside the range recommended by the guidelines be explained in writing by the trial court judge."); Fla. R. Crim. P. 3.701(d)(11) ("Departures from the recommended or permitted guideline sentence should be avoided unless there are circumstances or factors that reasonably justify aggravating or mitigating the sentence.  Any sentence outside the

permitted guideline range must be accompanied by a written statement delineating

the reasons for the departure.").

The trial court departed from the statutorily permitted range to life in prison

for the following reasons (Doc. 25-1 at 49–50):

> [Trial court:]    I adjudicate him guilty. I sentence him to
> life in prison based on the testimony and
> all of the evidence that has been
> presented, and based on the departure
> from the guidelines.
>
> I do find that any of the three reasons that
> I've indicated, both the heightened
> calculation, both the psychological
> trauma, and the fact that the victim was
> especially vulnerable, any and all of those
> reasons would be reasons for the Court to
> depart. If an appellate court decides that
> factually one or two of those reasons are
> not appropriate, or there's not sufficient
> evidence, then the Court would find that
> the remaining reason would be a sufficient
> reason for the Court to depart.
>
> I do find that the unscorable priors would
> be a reason to depart from the guidelines.
> But since I am not going up one or two
> cells in this case, I'm not using that as
> a reason for the Court to effectuate
> a departure from the guidelines.

Because the jury did not determine that the prosecutor proved beyond

a reasonable doubt that Sheppard committed the crime with "heightened

premeditation," that the victim suffered "psychological trauma," or that the victim

was "especially vulnerable," the trial court's departure violated *Apprendi*. *Blakely*,

542 U.S. at 304 ("When a judge inflicts punishment that the jury's verdict alone does

not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority.") (citation omitted).

However, the post-conviction court did not unreasonably determine that the *Apprendi* violation is harmless. *Washington v. Recuenco*, 548 U.S. 212, 222 (2006) ("Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error."); *United States v. King*, 751 F.3d 1268, 1279 (11th Cir. 2014) ("We have explained that '*Apprendi* did not recognize or create a structural error that would require *per se* reversal,' and that '*Apprendi* errors do not fall within the limited class of fundamental constitutional errors that defy analysis by harmless error standards.'") (citations omitted). *Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022) ("No one questions that a state court's harmless-error determination qualifies as an adjudication on the merits under AEDPA.").

The prosecutor carried the burden to demonstrate that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."); *Neder v. United States*, 527 U.S. 1, 18 (1999) ("We think [ ] that the harmless-error inquiry must be [ ]: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?").

At trial, J.J.F. testified that she tried to dissuade Sheppard from committing the crime, and he responded that "he had made a bet," that "[t]hey were willing to pay him five-hundred dollars to do this," and that "they would know if he didn't do

it [because] they were . . . close by." (Doc. 25-2 at 221)  Sheppard, who was naked, pointed a sharp object at J.J.F., directed her to move to the living room, and held the sharp object against J.J.F.'s body while he sexually battered her.  (Doc. 25-2 at 210, 212, 219–20)  After Sheppard sexually battered J.J.F., he told J.J.F. to clean herself in the shower and to remain in the shower until he left.  (Doc. 25-2 at 216) A rational jury would have determined that this unrebutted evidence proved that Sheppard acted with "heightened" premeditation.  *United States v. Payne*, 763 F.3d 1301, 1304 (11th Cir. 2014) ("As we have explained with regard to *Apprendi* errors, such errors are harmless beyond a reasonable doubt when there is 'uncontroverted evidence' supporting a statutory fact that alters the range of possible sentences a defendant may receive."); *State v. Obojes*, 604 So. 2d 474, 475 (1992) ("[W]e hold that premeditation or calculation is a sufficient reason for departure in a sexual battery case only if it is of a heightened variety.  To this end, heightened premeditation or calculation consists of a careful plan or prearranged design formulated with cold forethought.").

Also, J.J.F. slept with her daughter, who was five, when Sheppard woke J.J.F., threatened J.J.F. with a sharp object, and sexually battered J.J.F. in the living room.  (Doc. 25-2 at 209, 211)  J.J.F. feared that Sheppard would harm her daughter (Doc. 25-2 at 212, 213), particularly when Sheppard forced J.J.F. to shower.  (Doc. 25-2 at 217)  After Sheppard left the home, J.J.F. immediately went to her daughter's bedroom to confirm that her daughter suffered no injury.  (Doc. 25-2 at 218) A rational jury would have determined that this credible, unrebutted evidence proved

that J.J.F., who was unarmed and alone with her young daughter, was "particularly vulnerable." *United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000) (holding that an *Apprendi* error is harmless "if the record does not contain evidence that could rationally lead to a contrary finding with respect to" the fact determined by the trial judge to justify an aggravated sentence).

Lastly, even if a rational jury would have determined that the evidence proved only one of the factors beyond a reasonable doubt, the trial judge concluded that one factor by itself supported the departure. (Doc. 25-1 at 49–50) Consequently, the post-conviction court did not unreasonably deny the claim. *Albritton v. State*, 476 So. 2d 158, 160 (Fla. 1985), *superseded on other grounds by* Ch. 87-110, § 2, Laws of Fla. ("[W]hen a departure sentence is grounded on both valid and invalid reasons[,] the sentence should be reversed and the case remanded for resentencing unless the state is able to show beyond a reasonable doubt that the absence of the invalid reasons would not have affected the departure sentence.") (citing *Chapman*, 386 U.S. at 18). Ground two is denied.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Sheppard claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains

that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of

counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the
> Supreme Court set forth a two-part test for analyzing ineffective
> assistance of counsel claims. According to *Strickland*,
>
> > First, the defendant must show that counsel's
> > performance was deficient. This requires showing
> > that counsel made errors so serious that counsel
> > was not functioning as the "counsel" guaranteed
> > the defendant by the Sixth Amendment. Second,
> > the defendant must show that the deficient
> > performance prejudiced the defense. This
> > requires showing that counsel's errors were so
> > serious as to deprive the defendant of a fair trial,
> > a trial whose result is reliable.

"[T]here is no reason for a court deciding an ineffective assistance claim . . .

to address both components of the inquiry if the defendant makes an insufficient

showing on one." *Strickland*, 466 U.S. at 697.  "[C]ounsel is strongly presumed to

have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment."  466 U.S. at 690.  "[A] court deciding an

actual ineffectiveness claim must judge the reasonableness of counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's

conduct."  466 U.S. at 690.  *Strickland* requires that "in light of all the circumstances,

the identified acts or omissions were outside the wide range of professionally

competent assistance."  466 U.S. at 690.

Sheppard must demonstrate that counsel's alleged error prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.  To meet this burden, Sheppard must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

Sheppard cannot meet his burden by showing that the avenue chosen by counsel proved unsuccessful.  *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).  *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Strickland*, 466 U.S. at 690–91.

Sustaining a claim of ineffective assistance of counsel under Section 2254(d) is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted).  *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

In determining "reasonableness," Section 2254(d) authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry"

and not independently assessing whether counsel's actions were reasonable. *Putman v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001). The presumption of correctness and the highly deferential standard of review require that the analysis of each ground begin with the state court's analysis.

## A. Grounds of IAC Before and During Trial

**Ground Three:**

Sheppard asserts that trial counsel deficiently performed by failing to call Jeff Beanblossom and Brian Ketter to testify at trial. (Doc. 18 at 12–13) The post-conviction court denied the claim as follows (Doc. 25-2 at 193–94) (state court record citations omitted):

> Defendant argues that counsel was ineffective for failing to contact several other alibis, after being apprised of their contact information and availability to testify. Specifically, Defendant claims that he provided counsel with the contact information for Jeff Beanblossom and Brian Ketter, who would have testified that they remained awake with Defendant from 3 A.M. to 5 A.M. on the date the offenses occurred. Had counsel contacted these witnesses, Defendant contends, there is a reasonable probability the outcome of his trial would have been different.

> This claim has no merit. Counsel cannot be deemed ineffective for failing to call a purported alibi witness whose testimony would have conflicted with another witness's alibi testimony. *Happ v. State*, 922 So. 2d 182, 192 (Fla. 2005). In this case, counsel presented Dwayne Milligan as an alibi witness who testified that he celebrated the birth of his daughter on June 21, 1985, and several of his friends, including Defendant, were with him from 7 P.M. until the next morning. His testimony was that they went to several bars and returned to his house at approximately 3 A.M., at which time they all went to sleep. Thus, if counsel had called either of the witnesses Defendant now refers to, and if they had testified as Defendant now suggests, their testimony would have contradicted Milligan's testimony.

> As an additional matter, even if these individuals had testified
> as Defendant describes, their testimony, like Milligan's, would
> have been in conflict with the evidence indicating that
> Defendant was stopped and cited for reckless driving that same
> night, at some point between 7 P.M. and 3 A.M., and possibly
> even arrested.
>
> Finally, the State presented other crucial evidence of
> Defendant's guilt, such as testimony revealing that Defendant's
> fingerprint was recovered from the victim's window screen; that
> a car matching the description of Defendant's car was seen at
> the victim's house on the night of the offense; that Defendant
> was a longtime friend of the victim's neighbor and was familiar
> with the area; and the similar facts of his 1986 arrest. Therefore,
> it is doubtful that the outcome of the case would have been
> different even if counsel had called these witnesses. *See Rimmer
> v. State*, 59 So. 3d 763 (Fla. 2010). This claim is denied.

Sheppard did not support his post-conviction motion with an affidavit or

testimony by Beanblossom and Ketter to demonstrate that the witnesses would

testify in the manner that he contended.  He instead speculated that testimony by the

witnesses would support his alibi defense.  Because "[s]peculation is insufficient to

carry the burden of a habeas corpus petitioner as to what evidence could have been

revealed by further investigation," the post-conviction court did not unreasonably

deny the claim.  *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985).  *See also

Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("[The] prejudice burden is

heavy where the petitioner alleges ineffective assistance in failing to call a witness

because 'often allegations of what a witness would have testified to are largely

speculative.'") (citation omitted).

Also, Sheppard proffered that Beanblossom and Ketter would testify that they

stayed awake on June 22, 1985, between 3:00 A.M. and 5:00 A.M., and Sheppard

stayed awake with them.  (Doc. 25-1 at 158–59)  Milligan testified at trial that he

celebrated the birth of his daughter with Sheppard, Beanblossom, Ketter, and one

other person, returned home with the four men at 3:00 A.M., went to sleep, and saw

Sheppard, Beanblossom, and Ketter at his home when he woke up the next morning.

(Doc. 25-1 at 267–68)  Because testimony by Beanblossom and Ketter is cumulative

to testimony by Milligan, the post-conviction court did not unreasonably deny the

claim.  *Van Poyck v. Fla. Dep't Corrs.*, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002)

("A petitioner cannot establish ineffective assistance by identifying additional

evidence that could have been presented when that evidence is merely cumulative.");

*Tanzi v. Sec'y, Fla. Dep't Corrs.*, 772 F.3d 644, 660 (11th Cir. 2014) ("'[E]vidence

presented in postconviction proceedings is cumulative or largely cumulative to or

duplicative of that presented at trial when it tells a more detailed version of the same

story told at trial or provides more or better examples or amplifies the themes

presented to the jury.'") (citation omitted).

      Lastly, police found Sheppard's fingerprints on the screen of the window that

opened to the bedroom of J.J.F.'s daughter, a neighbor observed a light blue car with

a white vinyl top, that matched the description of Sheppard's car, parked outside

J.J.F.'s home on the night of the crime, Sheppard's "longtime friend" lived across the

street from J.J.F., J.J.F. testified that the perpetrator threatened her with a sharp

object and sniffed from a container for inhalants, and the following year a police

officer detained Sheppard near J.J.F.'s home and found in his pockets a knife,

a container for inhalants, and a woman's stockings.  (Doc. 25-1 at 221–22,

233–37, 251–59)  Because this strong circumstantial evidence proved Sheppard's identity as the perpetrator and contradicted the testimony by Beanblossom and Ketter, Sheppard failed to demonstrate a reasonable probability that the outcome at trial would change if trial counsel called the two men to testify.

Consequently, the post-conviction court did not unreasonably deny the claim. *Boyd v. Comm'r, Ala. Dep't Corrs.*, 697 F.3d 1320, 1340 (11th Cir. 2012) ("[T]he 'new' alibi evidence is contradictory, cumulative, and weak when compared to the evidence adduced at trial.  So, even if we were to consider this later proffer and assume that trial counsel performed deficiently by failing to present it (and there is no indication of that), there is no reasonable probability of a different outcome."). Ground three is denied.

**Ground Four:**

Sheppard asserts that trial counsel deficiently performed by failing to object based on the Confrontation Clause to the admission of out-of-court statements by Officer Bernard McKenna.  (Doc. 18 at 14–15)  The post-conviction court denied the claim as follows (Doc. 25-1 at 195–97) (state court citations omitted):

> Defendant claims that counsel was ineffective for failing to object to a violation of the Confrontation Clause. Specifically, Defendant argues that "the State could not produce witness Officer McKenna due to his refusing to show." He further alleges that "counsels were ineffective for failing to object to the severity of the perjured testimony that was allowed in trial pertaining to Officer McKenna having the original citation tickets when throughout Officer McKenna's depositions and trial testimony denied knowing anything about any citations, then having a change of heart admits to having them three months before." Finally, Defendant contends that if counsel had objected to the Officer McKenna's testimony, that his alibi defense would have proved that the citation was issued during

McKenna's "second shift between the hours of 7 P.M. until 12 A.M."

This claim has no merit. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." *Twilegar v. State*, 42 So. 3d 177 (Fla. 2010). Where a party intends to admit former testimony of a witness, the Confrontation Clause requires that the party against whom the testimony is admitted have an opportunity at the prior proceeding to cross-examine the witness. *Happ v. Moore*, 784 So. 2d 1091, 1100–01 (Fla. 2001). If the party challenging the admission of former testimony had the opportunity to cross-examine the witness, there is no Confrontation Clause violation. *Id.*

In this case, Officer McKenna's previous trial testimony was admitted because he was living in South Carolina at the time of the second trial and because defense counsel had an opportunity to cross-examine him at the prior proceeding. All of his previous testimony, including the cross-examination, was read to the jury at the instant trial. Therefore, there was no Confrontation Clause violation. As a result, counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Teffeteller v. Dugger*, 734 So. 2d 1009, 1023 (Fla. 1999).

To the extent that Defendant faults counsel for failing to object "to the severity of the perjured testimony" regarding the original citation, this claim has no merit in light of the Court's conclusion [denying an earlier claim]. The fact that the original citation could not be produced, or that the parties relied on other record evidence, does not suggest that the officer or prosecutor committed perjury by referring to Defendant's reckless driving charge.

Finally, with regard to Defendant's claim that the citation could have shown he was cited during Officer McKenna's "second shift," this allegation is based on pure speculation. First, Defendant stipulated to the fact that a citation was issued by Officer McKenna on June 22, 1985, between the hours of 7 P.M. to 3 A.M. And second, Defendant testified at trial that he had no recollection of being stopped or cited by Officer McKenna on June 22, 1985. Based upon these reasons, Defendant has failed to show that counsel was ineffective for failing to object to the officer's testimony. *See Bass v. State*, 932 So. 2d 1170, 1172 (Fla. 2d DCA 2006) ("[P]ure speculation

cannot be a basis for postconviction relief."). This claim is denied.

The trial court admitted into evidence testimony by Officer McKenna from Sheppard's earlier trial. (Doc. 25-1 at 241–42) The trial judge informed the jury that the police officer could not attend the trial because he retired in South Carolina (Doc. 25-1 at 242):

> [Trial court:] Bob Stinson is going to be reading the testimony, I'll indicate to you, of Bernard McKenna, who's a Clearwater officer. Officer McKenna has since retired and lives in the state of South Carolina. So rather than have the expense of having him down from South Carolina, we're going to have Mr. Stinson read his testimony from a prior court proceeding into the record so you can have the benefit of that.

Because the prosecutor did not attempt in good faith to secure the attendance of the police officer at trial and instead chose not to call the police officer to avoid the expense of travel, the post-conviction court ruled contrary to clearly established federal law by determining that no violation under the Confrontation Clause occurred. *Ohio v. Roberts*, 448 U.S. 56, 65 (1980), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004) ("[I]n conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant."); *Barber v. Page*, 390 U.S. 719, 724–25 (1968) ("[A] witness is not 'unavailable' for

purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence.  The right of confrontation may not be dispensed with so lightly.").

If trial counsel had objected to the out-of-court testimony, an objection would have succeeded.  However, even under a less deferential *de novo* review, Sheppard cannot demonstrate a reasonable likelihood that the outcome would change if trial counsel objected.  *Strickland*, 466 U.S. at 694.  *McGahee v. Ala. Dep't Corrs.*, 560 F.3d 1252, 1266 (11th Cir. 2009) ("Where we have determined that a state court decision is an unreasonable application of federal law under 28 U.S.C. § 2254(d), we are unconstrained by § 2254's deference and must undertake a *de novo* review of the record.").

At trial, the out-of-court testimony by the police officer did not inculpate Sheppard (Doc. 25-1 at 244–48):

|  |  |
|---|---|
| [Prosecutor:] | Okay. On June 22nd of 1985, do you remember what particular shift you were working at the time? |
| [Officer:] | I should have been working seven at night to three in the morning on Clearwater Beach. |
| [Prosecutor:] | And as a sergeant, what were your particular duties? |
| [Officer:] | Basically, it was crowd control on Clearwater Beach. I had five guys that |

worked for me, and we were responsible [for] keeping the traffic moving, fights down.

. . .

[Prosecutor:]    I'm handing you what's been previously entered into evidence as State's Exhibit 4-A and 4-B. Have you had a chance to review Exhibits 4-A and 4-B?

. . .

[Prosecutor:]    Would that be the record of a traffic citation that you wrote back in 1985?

[Officer:]    To be honest with you, I don't know.

[Prosecutor:]    Do you have any recollection of it?

[Officer:]    No.

[Prosecutor:]    Do you see your name on State's Exhibits 4-A or 4-B?

[Officer:]    I see it on A. I don't see it on B. I see it on A.

[Prosecutor:]    Does it appear that 4-A and 4-B are two pages of the same document perhaps?

[Officer:]    Same name, same citation numbers, same name, same citation numbers.

[Prosecutor:]    What's the defendant's name?

[Officer:]    Dwayne Edward Sheppard.

[Prosecutor:]    And what is the date of that citation?

[Officer:]    6/22/1985.

[Prosecutor:]    June 22nd of 1985?

[Officer:]    Yes.

[Prosecutor:]    And what is the citation for?

| | |
|---|---|
| [Officer:] | To be honest, I'm not sure what it was for. It may be written down there, but I don't see it. |
| [Prosecutor:] | Can you tell us what the citation number is, please? |
| [Officer:] | 85-0007078, M as in Mary, Q as in queen. |
| [Prosecutor:] | Can you tell us the listed vehicle that was involved? |
| [Officer:] | 1973 Mercury, Florida tag 820 Charles William King. |
| [Prosecutor:] | And can you tell us, at that time, a reckless driving charge, is that a criminal charge? |
| [Officer:] | Generally speaking, yes. |
| [Prosecutor:] | And when you were working in that capacity as a sergeant, when you made a stop for a criminal — for a criminal traffic infraction such as reckless driving, what was your general habit or your procedure? |
| [Officer:] | Well, the procedure, if it was reckless, he probably would have been physically arrested and taken to jail. |

On cross-examination, the officer confirmed that he did not remember issuing the citation (Doc. 25-1 at 248):

| | |
|---|---|
| [Trial counsel:] | It's true that you have no independent recollection of issuing that citation, correct? |
| [Officer:] | No, I do not. |
| [Trial counsel:] | You don't even have a time as to when it was issued or a place? |

[Officer:]             Just what they told me. To be honest,
I had the tickets up until about three
months before.

The prosecutor introduced into evidence, as Exhibits 4-A and 4-B, a printout

from the Pinellas County clerk's website showing that Sheppard received a traffic

citation on June 22, 1985, while driving a 1973 Mercury. (Doc. 25-1 at 190)  The

officer's testimony did not establish a predicate for the admission of the exhibits.

The prosecutor called a records custodian from the clerk's office to introduce the

exhibits under Section 90.803(8), Florida Statutes, the public records exception to the

rule against hearsay. (Doc. 25-3 at 366–67)  Also, the parties stipulated that the

traffic stop occurred (Doc. 25-3 at 368–69):

[Trial court:]       The State and the defense agree and
stipulate that on June 22nd of 1985, the
defendant in this case, Dwayne Edward
Sheppard, between the hours of 7:00 P.M.
and 3:00 A.M., was stopped by the
Clearwater Police Department in the city
of Clearwater and given a citation for
reckless driving.

Sheppard admitted on cross-examination that he "possibly" received the

citation and pleaded guilty (Doc. 25-3 at 583), and trial counsel argued in closing

that the citation was not inconsistent with Sheppard's alibi (Doc. 25-3 at 653–54):

[Trial counsel:]     Now, if you look at the time — you heard
the testimony that was read into the
record of Deputy McKenna. And the only
information that you have is that, one,
Mr. Sheppard received a citation some
time on June 22nd of 1985.

Now, from the testimony that was read in
the record, he said that his shift back then
usually would have been between 7:00

P.M. and 3:00 A.M. So it's not inconsistent with Mr. Sheppard's or Mr. Mulligan — both Mr. Mulligan's and Mr. Sheppard's testimony, because who's to tell if he did not get that ticket at 7:00 P.M., June 22nd, sometime in the evening? Now, this means that this would have been several hours after this rape occurred.

So, again, we don't have a time, so it leaves you to speculate. And, again, it does not destroy Mr. Sheppard's alibi because he tells you where he was from the late-night hours of June 21st until the early morning of June 22nd. There is no testimony as to what time the ticket was issued.

Even if trial counsel objected to the admission of the officer's vague out-of-court testimony concerning the traffic stop, other evidence proved that the traffic stop occurred. Even if the officer cited Sheppard for reckless driving, Sheppard could have either spent the evening with Milligan or committed the crime.[2] Because Sheppard fails to demonstrate a reasonable probability that the outcome at trial would change if trial counsel had objected, his claim fails. *Strickland*, 466 U.S. at 695 ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.").

Sheppard contends that, if trial counsel had objected to the officer's out-of-court testimony and demanded that the officer testify at trial, trial counsel

---

[2] The officer's speculative testimony that he "probably" would arrest a defendant for reckless driving was both inculpatory and exculpatory. If Sheppard suffered an arrest and spent the evening in jail, he would have neither spent the evening with Milligan nor committed the crime.

would have demonstrated on cross-examination that the officer perjured himself at the first trial and issued the citation during his second shift between 7:00 P.M. and 12:00 A.M.  (Doc. 18 at 15)  However, Sheppard fails to present evidence that demonstrates that the officer issued the citation during his second shift.  At the first trial, the officer testified that he did not remember issuing the citation. (Doc. 25-1 at 248)  Trial counsel was unable to obtain the citation and other records from the police department because "such records have been destroyed and are unavailable due to the passage of time."  (Doc. 25-1 at 284)  Because Sheppard supports his claim with speculation, his claim fails.  *Johnson v. Alabama*, 256 F.3d 1156, 1186 (11th Cir. 2001) ("Absent a showing that real impeachment evidence was available and could have been, but was not, pursued at trial, Johnson cannot establish that the cross conducted by his attorneys fell outside the range of professionally competent assistance."); *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) ("Absent a showing of 'a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial,' the petitioner is unable to show prejudice necessary to satisfy the second prong of *Strickland*.").  Ground five is denied.

## VI.  CONCLUSION

Sheppard's amended application for the writ of habeas corpus (Doc. 18) is **DENIED**.  The clerk must enter a judgment against Sheppard and **CLOSE** this case.

## DENIAL OF CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Sheppard fails to demonstrate either a substantial showing of the denial of a constitutional right or that reasonable jurists would debate either the merits of the grounds or the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  Sheppard must obtain permission from the court of appeals to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 29, 2023.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE